## CHARLES GUSTAFSON V. THE STATE.

No. 1751. Decided May 4, 1898.

Motion for Rehearing Decided December 21, 1898.

**1. Taking Oysters Without License—Construction of Statutes.**

Penal Code, article 529l, which provides for a license in order to pursue the business of taking oysters from the public beds or reefs of this State for sale, is not repealed nor affected by the Act of 1897; and, construing that article with article 529s of the Act of 1897, chapter 98, the offense is clearly defined with ample provisions made for obtaining the license required by law.

ON MOTION FOR REHEARING.

**2. Same—Penal Code, Articles 529k and 529l, Unconstitutional.**

Article 529k of the Penal Code, which provides that only a bona fide citizen of the United States, a resident and taxpayer of the State, may take oysters from public reefs, and article 529l and article 529s, which limit the right to hold a license to take oysters on the public beds and reefs to residents and taxpayers of the State of Texas, and levying a license tax for such occupation, are unconstitutional in that they are violative of article 1, section 3, guaranteeing to all citizens equality of rights; and also violative of article 1 section 26, inhibiting perpetuities and monopolies.

APPEAL from the Criminal District Court of Galveston. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for taking oysters from the public reefs and beds of the State without having first procured a license; penalty, a fine of $15.

The opinion states the case.

*Byron Johnson* and *Marsene Johnson,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was prosecuted and convicted under article 529s of chapter 98, of the Act of 1897, which is as follows: "It shall be unlawful for any person to take or gather oysters from the public reefs or beds of the State for sale without having first procured

a license from the fish and oyster commissioner or his deputy. Any person offending against this article shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten dollars nor more than two hundred and fifty dollars; and any person offering for sale or selling oysters, who is not a regular dealer or has not procured a license for gathering oysters, shall be considered as gathered for sale." Counsel for appellant contends that there is no law regulating the issuance of licenses for pursuing this business; that the last Act of the Legislature, passed in 1897, was a substitute for and repealed all former acts upon this subject, and that there is no provision of law regulating the licensing of this occupation or business. When we examine the Act of 1897, we find that the title thereof expressly states its objects in unmistakable terms. It is "An act to amend articles 529c, 529d, 529g, 529h, 529m, and 529n of chapter 5 of title 13 of the Revised Penal Code of the State of Texas of 1895, and by adding articles 529s and 529t to said chapter 5 of title 13 of said Penal Code of the State of Texas, relating to offenses for the protection of fish, birds, and game, and to repeal all laws in conflict herewith." Now, it will be observed that article 529l is not affected by this act, and remains just as it stood before this act was passed. When we consult article 529l, we find that it provides clearly for a license in order to pursue the business of taking oysters from the public beds or reefs of this State for sale. As above stated, the contention of the appellant is that this article has been repealed. We do not agree to this contention. It has never been affected by the Act of 1897. Construing this article 529l in connection with article 529s, the offense is clearly defined, with ample provisions made for obtaining the license required by law. This is the only contention urged by appellant, and we do not think it is well taken, and the judgment is accordingly affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—Appellant was convicted of a violation of the fish and oyster law, and his punishment assessed at a fine of $15. The case was affirmed at the Austin term, 1898, and now comes before us on motion for rehearing. The decision was predicated on the proposition that the statute making this a penal offense had not been repealed. Appellant, however, insists that we overlooked the constitutional question raised by him, and now urges the same. He claims that the statute is violative of that provision of section 3 of article 1 of our Bill or Rights which reads as follows: "All free men when they form a social compact have equal rights, and no man or set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services." The clause of the statute which he contends is in violation of this provision of the Constitution is that portion which limits the right to pursue the business of catching oysters in the public

waters of the State to all citizens of the United States, resident in the State of Texas, who are taxpayers; thus inhibiting all citizens of the United States who may be residents of the State of Texas, but who are not taxpayers, from taking oysters in waters controlled or owned by the State. We are referred to articles 529k and 529l, Penal Code. Article 529k is as follows: "It shall be unlawful for any person to catch or take oysters from the public beds and reefs for sale who is not a bona fide citizen of the United States and a resident and taxpayer of the State. Any person offending against this section shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten dollars nor more than two hundred and fifty dollars." Article 529l reads: "It shall be unlawful for any person to gather oysters with tongs or otherwise from the public beds and reefs of this State for sale without a license from the fish and oyster commissioner or his deputy for each and every pair of tongs that shall be used on his boat, and for such license he must pay to the fish and oyster commissioner or his deputy the sum of five dollars for each pair of tongs; and any person shall be entitled to hold such license who is a citizen of the United States and a resident and taxpayer of the State of Texas. Such license shall be good from the day of issuance until April 30th next; such license shall be signed by the fish and oyster commissioner or his deputy, and stamped with the seal of his office, and shall state the name of applicant and date of issuance; provided, that any person holding such license in his own name may take or catch oysters from any boat. Anyone offending against this article shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten dollars, nor more than two hundred and fifty dollars, and each day shall constitute a separate offense." So it will be seen that the statutes on the subject are as claimed by him; that is that persons who are not taxpayers, although they may be citizens of the United States, and residents in the State of Texas, can not procure a license to take oysters within the waters of the State, although they may be able to purchase a license, and make tender of the amount to the proper authority. The question then is, does the fact that such persons are prohibited from procuring a license, while all other persons, citizens of the United States, and residents within the State of Texas, and taxpayers, can procure a license to take oysters, render the statute in question violative of the Constitution of the State, above quoted. We can find no case in which the question as here presented has been adjudicated. We do find a number of cases in which the question of proprietary rights and common rights in fisheries has been discussed. In all the cases, so far as we are advised, it is held that navigable rivers, and contiguous portions of the sea embraced within the territory belonging to the State, are the property of the State, that they belong to all citizens thereof, and that every citizen has a right in common with every other citizen to take fish in such waters. See Collins v. Benbury, 25 N. C., 277; Carson v. Blazer, 2 Bin., 475; Chalker v. Dickinson, 1 Conn., 382; Lay v. King, 5 Day, 72; Peck

v. Lockwood, Id., 22. The last cited case was a case involving the right to take shellfish on land claimed by plaintiff. The facts were that plaintiff owned a tract of land fronting on the river, where the tide ebbed and · flowed. At low tide the locus in quo was dry land, but when the tide was in it was covered by the flow of the sea. Plaintiff claimed proprietary rights in the locus in quo, and defendant justified on the ground that at high water it was a part of the river or sea, and was open, for the purpose of fishing, to all the citizens of the State. The court discussed a number of common-law authorities on the subject, and from them deduced the following: "That the right to fish on the soil of another, when overflowed with the tide from the sea or arm of the sea, is a common right; and every one may fish in the sea, of common right, though it flows on the soil of another." As stated, however, there is no controversy upon this point; that is, that the locus in quo in this case was the property of the State. Nor is it controverted that the State may properly regulate the use of all its property, but it is insisted that in granting privileges to use its public domain, whether of land or water, it must do so under the operation of the fundamental principle upon which our government is established,—that is, equality. Our Constitution provides (section 3, article 1): "All free men when they form a social compact have equal rights, and no man or set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services." Section 26 provides: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed." Mr. Cooley says on this subject (Cooley, Constitutional Limitations, 485): "Equality of rights, privileges, and capacities unquestionably should be the aim of the law; and if special privileges are granted or special burdens or restrictions imposed, in any case, it must be presumed that the Legislature designed to depart as little as possible from the fundamental maxim of government. The State, it is to be presumed, has no favors to bestow, and designs to inflict no arbitrary deprivations of rights. Special privileges are always obnoxious, and discrimination against persons or classes is still more so." But it is contended here that the right to take the oysters in the public waters of the State is a privilege which the State can bestow as it pleases; that it can lease or let its public domain on whatever terms it sees fit. We can not assent to this proposition. It might be so in a kingly government, but not in a free government, in which all are equal before the law. And right here, it occurs to us, is where the provisions of our Constitution above quoted come into operation. The State has no right to discriminate against any citizen or class of citizens as to the enjoyment of its public domain. The State has no more right to authorize one class of its citizens, to the exclusion of another class, to use or rent this character of property, than it would have to authorize one class of citizens, to the exclusion of another class of its citizens, to rent or use its public lands. We do not believe it would be seriously contended that the State could authorize only taxpayers to rent its public domain of lands to the exclusion of another

class of its citizens who were not taxpayers. This would not only be a discrimination, but discrimination in favor of the rich against the poor; and this, as we understand it, was exactly what our Constitution intended to guard against. If the State could authorize its citizens who were taxpayers to fish, and inhibit its citizens who were not taxpayers from fishing, in its public waters, it could equally authorize its citizens who were not taxpayers to fish in such waters to the exclusion of those who were taxpayers. In this connection, we would observe that we think the law on this subject, as passed by the Legislature, intended to apply to persons who paid taxes on property. If this be the true construction, then a great number of our citizens would be deprived of the power to procure a license to take oysters in the public waters of the State, no matter how willing they might be to pay the license tax and comply with the law in other respects. But it is said that our Constitution authorizes a poll tax. But if one who pays a poll tax be considered a taxpayer, under the provisions of this law, we find that the Legislature has eliminated certain citizens from the payment of the poll tax: that is, it has exempted persons over a certain age from the payment of a poll tax. And the defendant in one of these cases offered to prove that he was exempt, under the provisions of the statute, from the payment of the poll tax, and that, not being even a poll-tax payer, under the law he was debarred the right of procuring a license. This illustrates the fact that if it be conceded that a poll-tax payer is a taxpayer, in contemplation of this law, still it operates against a class of our citizens. It may be said, however, that the law may be unconstitutional in part, but operative as to those who are not excluded from its benefits and privileges. To this we reply that we do not believe that the act is so framed as to be separated, and a part held to be constitutional. The fact that it is class legislation qualifies the act, or that provision of it authorizing the granting of a license, and so renders it unconstitutional and void. Pullman Palace Car Co. v. State, 64 Texas, 274; Ex Parte Jones, 38 Texas Crim. Rep., 482.

We hold that the waters of the State, as well as all its domain of public lands, are equally open to all of its citizens upon the same terms and conditions, and that the attempt of the Legislature to prohibit residents of the State who are not taxpayers, but who are willing to pay the license tax, from fishing in the public waters of the State, is violative of those provisions of the Constitution before mentioned. We therefore hold that the act in question levying the license tax is null and void. The motion for rehearing is granted, and the judgment is reversed, and the prosecution ordered dismissed.

*Reversed and dismissed.*

HURT, PRESIDING JUDGE.—Owing to bad health, I have not given the subject discussed in this opinion that investigation necessary for me to form an opinion. I therefore express no opinion upon the question upon which the judgment was reversed.