STATE *v.* JIM HILL.

[53 South. 411.]

1. CODE 1906, § 2305. *Board supervisors. Game. Constitution of United States. Fourteenth Amendment,* § 2.

Code 1906, § 2305, confers upon boards of supervisors "full jurisdiction and authority for the protection and preservation of game and fish in their respective counties and to conserve the same for the use and consumption of the inhabitants." The word inhabitants in this section means the inhabitants of the county as distinguished from the other inhabitants of the state.

2. SAME.

This section is violative of section 2 of the Fourteenth Amendment to the Constitution of the United States in that it denies the equal protection of the law to some persons within the jurisdiction of the state.

3. WILD GAME, TITLE TO.
    The state is the owner of all wild game, such as animals, birds and
    fish, within its borders.

APPEAL from the circuit court of Itawamba county.
HON. J. A. MITCHELL, Judge.

Jim Hill was indicted on the charge of violating the
game laws. A peremptory instruction was given for the
defendant and the state appeals.

The facts are fully stated in the opinion of the court.

*Jas. R. McDowell,* for appellant.

The board of supervisors is given special authority
by Code 1906, §§ 2305, 2306, 2307 and 2309, to regulate
or prohibit hunting and fishing, and the board may do
this so as to affect residents of the very county itself.
In other words, the board of supervisors of Itawamba
county could have prohibited hunting and fishing in
Itawamba county for one year or a number of years or
seasons, or could have passed any order regulating the
taking of game or fish, which was not contrary to the gen-
eral law or the Constitution. This being true, the order
in question is . certainly valid unless unconstitutional.
There is a special statute which permits the board to
enact it, and if it is in violation of any section of the Con-
stitution of the state, I am unable to find it. I respect-
fully submit the question of whether it is a violation of
the 14th amendment to the Constitution of the United
States. The only question about which I have any doubt
is whether or not the board meant, or could have meant
by this, a non-resident of the state or of the county in
using the word "non-resident," without any qualifica-
tion whatever.

*Clayton, Mitchel & Clayton,* for appellee.

In the court below the defendant made two objections
to the order of the board.

1st. It is uncertain as to what the term non-resident, used in the order means. The general use of the term is applied to persons residing out of the state. In § 2336 of the Code of 1906, the legislature uses the term in that sense, and authorizes landowners to permit non-residents to hunt with them on their own land. If it was the intention of the board to punish only non-residents of the state as their language seems to imply, then of course defendant who is a resident of Lee county, Mississippi, could not be guilty.

And if the board meant to prohibit fishing in their county by non-residents of the county, they should have used the proper terms to express it, and if they had they would have exceeded their power.

2nd. Admitting that the order applies to non-residents of the county, then we say it is manifestly unconstitutional. In chapter 57 of the Code of 1906 will be found all the authority delegated by the legislature to the board of supervisors, with reference to this subject.

Section 2305 of said chapter gives the board of supervisors ''Full jurisdiction and authority for the protection and preservation of game and fish in their respective counties, and to conserve the same to the inhabitants.'' If the legislature has given the board of supervisors any authority to pass an order of this character, it must be found in the language quoted. If the use of the word ''inhabitant'' in this section means the inhabitants of the county, then there is probably authority granted for the order in question.

But if this is the meaning of § 2305, it is clearly unconstitutional.

It will be admitted that the board of supervisors has only such power over game and fish as is delegated to them by the legislature and unless the legislature could pass a valid law, of like tenor and effect as this order, then they could not authorize the board of supervisors to pass such order.

Then we will consider the question as to whether the legislature could pass a law of this kind without doing violence to the Constitution.

Section 1 of article 14 of the Constitution of the United States, paragraph (a), says: "No state shall make or enforce any law which shall abridge the privileges of citizens of the United States. . . . Nor deny any person within its jurisdiction the equal protection of the laws." This provision of the Federal Constitution, which we reluctantly accepted, guarantees to every citizen of the state the equal protection of the laws.

It guarantees to the citizens of Lee county the same protection of the laws as the citizens of Itawamba county. The Constitution of the state gives the board of supervisors full jurisdiction over roads and bridges. Then suppose the board of supervisors of Itawamba county, should pass an order forbidding non-residents of the county the use of the roads of the county. Would it be argued that they had such power?

The state has the power to regulate the time, manner and extent of the taking of fish in the running waters within its borders.

In *Ex parte Fritz*, 86 Miss. 217, the court says: It is not only the right of the state, but also its duty, to preserve for the benefit of the general public, the fish in its waters, in their migrations and in their breeding places, from destruction or undue reduction in numbers through caprice, improvidence or greed of the riparian proprietors as well as trespassers." And on page 218 speaking of the same subject says: It is held with practical unanimity in all jurisdictions that animals *ferae naturae* are not the subject of private ownership, until reduced to actual possession; that the ownership of such animals, so far as they are capable of ownership is in the state, not as proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common, and that the state may regulate and restrict

the taking of such animals, or absolutely prohibit it, if deemed necessary for their preservation or for the public good.''

The legislature could authorize the county of Itawamba to preserve their fish, but not to preserve them for its own inhabitants, for the citizens of Lee county have the same interest in the fish and game of the state as has the citizens of Itawamba county. They are owned by our common parent.

The county of Itawamba may say at what time and in what manner fish may be taken, and whether by seine or hook, but their regulations must apply alike to all the sporting children of our common parent. The case of the *State of South Carolina* v. *Higgins,* 38 L. R. A. 561.

We also invite the attention of the court to the case of *Gustafeon* v. *State* (Tex.), 43 L. R. A. 615.

In this case the court holds that a statute limiting the right to take oysters to any class of persons is an unjust discrimination and violative of the Fourteenth Amendment in that it is a denial of the equal protection of the laws.

ANDERSON, J., delivered the opinion of the court.

The appellee, Jim Hill, was charged in an affidavit before a justice of the peace with violating an ordinance of the board of supervisors of Itawamba county prohibiting non-residents from fishing in the waters of that county, and was convicted, and appealed to the circuit court, where he was tried and acquitted, and from that judgment the state prosecutes this appeal.

The case was tried on an agreed state of facts, as follows:

''It is agreed by and between George T. Mitchell, district attorney, for the state, and Clayton, Mitchell & Clayton, attorneys for the defendant, that the following is a true statement of the facts in the above-styled case, to wit: That Jim Hill, the defendant, is a resident citizen

of Lee county, Miss.; that he fished in Twenty Mile creek, within the Second district of Itawamba county, Miss., on land not his own, and that he did not own any land in said county of Itawamba; that he did said fishing on or about the ―――― day of September, 1908; that the only question for the court to decide is whether the order of the board of supervisors of said county, passed on the ―――― day of ――――――, to prohibit non-residents from fishing in said county, would include residents of the said state who were not residents of said county of Itawamba, and also whether or not the said order is violative of the law or the Constitution of the state or the United States, and whether or not said order is valid.

"This 28th day of November, 1908."

The court gave a peremptory instruction to the jury to find the defendant not guilty, which they did, and judgment entered accordingly.

The ordinance in question is as follows:

"It is ordered by the board that non-residents shall not fish and hunt in Itawamba county, Miss., except those who own land in said county. It is further ordered that any person violating this order shall be fined the sum of ten dollars, one half of said fine to be placed in the county treasury, and the other half to be retained by the person who reports the same to a proper officer.

"In Matters of Amendments to Game Law.—After careful consideration by the board of the game law, passed at the May meeting of said board, that the said game law be amended as to non-residents fishing and hunting in said county. It is ordered by the board that non-residents be allowed to fish and hunt on their own land and none other. This act to take effect on and after its passage."

Section 2305, Code 1906, expressly conferred on the board of supervisors power to pass the ordinance in question. The language is: "The board of supervisors are given full jurisdiction and authority for the protec-

tion and preservation of game and fish in their respective counties, and to conserve the same for the use and consumption of the inhabitants.'' By ''inhabitants'' is evidently meant the inhabitants of the county, as distinguished from the other inhabitants of the state.

It is contended on the part of appellee that the granting of such power is violative of the clause of section 2 of the Fourteenth Amendment to the Constitution of the United States, which prohibits. a state from denying ''to any person within its jurisdiction the equal protection of the laws.'' In determining this question, it is well to have in view the relation of the state and its inhabitants to the game and fish within its borders. They belong to the sovereign. The title is in all the inhabitants of the state, and no person can acquire any absolute title, as against all others, except by capture and subjection to his own control. In a very able opinion in *Ex parte Louis Fritz,* 86 Miss. 210, 38 South. 722, 109 Am. St. Rep. 700, Justice Cox uses· this language: ''By reason of the migratory habits of fish, their ownership is· in the public, and no individual has any absolute property right in them until they have been subjected to his control. It is not only the right of the state, but also its duty, to preserve for the benefit of the general public the fish in its waters, in their migration and in their breeding places, from destruction or undue reduction in numbers, through the caprice, improvidence, or greed of the riparian proprietors as well as trespassers.'' And again, in *State* v. *Buckingham,* 93 Miss. 846, 47 South. 501: ''It is now settled that the sovereignty is the owner of wild game, on the idea that animals, birds, and fishes, wild by nature, may be preserved as a food supply for all the inhabitants.'' So it is clear that the fish and game in Itawamba county belong to the state, and the people of that county have no greater right in them than the balance of the people of the state. The state holds the title in trust for all the people, and, in making dis-

tributions of the benefits arising therefrom, must do so
with an equal hand, disregarding county lines or other
subdivisions.

The right to take game and fish is a valuable one, and
the state is without power to confer this right on the
people of one section and deny it to the balance of the
state. Now, the question is whether the state can make
a law (or authorize the board of supervisors to do so,
which amounts to the same thing) providing that the
game and fish within the borders of each county in the
state shall be protected and conserved alone for the
inhabitants thereof? Or, putting the concrete case, say
to the people of Itawamba county, "You may take the
game and fish found within your borders," but to the
balance of the people of the state, "You shall not"? A
more palpable denial of the equal protection of the law
is hardly conceivable. *State* v. *Higgins,* 51 S. C. 51, 28
S. E. 15, 38 L. R. A. 561; *Gustafson* v. *State,* 40 Tex. Cr.
R. 67, 45 S. W. 717, 48 S. W. 518, 43 L. R. A. 615.

*Affirmed.*