[No. 12795. Department Two. November 10, 1915.]

JOHN F. BARKER et al., *Appellants*, v. STATE FISH
COMMISSION, *Respondents*.[1]

CONSTITUTIONAL LAW — FISH — CLASS LEGISLATION — DISCRIMINA-
TION—EQUAL PROTECTION. Laws of 1915, p. 80, § 36, allowing the
use of purse and drag seines of over five hundred feet in length with
meshes of "three inches stretch measure," while prohibiting gill nets
of over five hundred feet in length and with meshes of less than five
inches stretch measure, is not unconstitutional as discriminatory
against, or denying the equal protection of the laws to, gill net fisher-
men, even if gill net fishing would be entirely destroyed; since it is
only a discrimination as to appliances respecting the state's own
property and methods of acquiring the same, applicable alike to all
persons, and not a classification or discrimination against persons.

SAME — DETERMINATION OF CONSTITUTIONALITY — EVIDENCE. The
courts will not take evidence as to the unconstitutionality of a stat-
ute but must determine its validity from matters that appear upon
its face or of which it takes judicial notice.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered April 15, 1915, upon sus-
taining a demurrer to the complaint, dismissing an action
for an injunction, tried to the court. Affirmed.

*Vince H. Faben*, for appellants.

*The Attorney General* and *Edward W. Allen, Assistant*,
for respondents.

PARKER, J.—This action was commenced in the superior
court for Thurston county by John F. Barker and others,
in behalf of themselves and all others similarly situated,
against Ernest Lister, Governor, Edward Meath, Treasurer,
and L. H. Darwin, State Fish Commissioner, constituting the
State Fish Commission, seeking to enjoin them from com-
mencing any action or proceeding looking to the arrest or
prosecution of the plaintiffs, or others similarly situated, for
violations of the provisions of the fisheries code enacted by

[1]Reported in 152 Pac. 537.

the legislature of 1915. The plaintiffs' complaint was demurred to on the ground, among others, that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the superior court, and the plaintiffs electing to stand on their complaint and not plead further, judgment of dismissal was entered against them, from which they have appealed.

The claimed rights of appellants to the relief prayed for is by their counsel rested upon the ground of the unconstitutionality of the fisheries code of 1915. It is contended that the restrictions and regulations of this law, if enforced, would deny to appellants privileges and immunities which it grants to others, in violation of article 1, § 12 of the state constitution, and would also deny to them the equal protection of the laws, in violation of the fourteenth amendment to the constitution of the United States.

The allegations of the complaint, so far as necessary to here notice them, are as follows:

"That these plaintiffs and all others similarly situated and for whom this action is brought are fishermen and derive their income from their daily prosecution of their occupation as fishermen in the waters of Puget Sound and other tide and fresh waters of the state of Washington; that they have invested in boats, seines, nets, anchors, and other equipment and paraphernalia used in their said business upwards of the sum of seventy-five thousand dollars, and each and all of the said plaintiffs are directly and financially interested in the welfare and preservation of said business and industry; that the value of the personal property and equipment possessed and used by the average gill net fishermen in the conduct of his fishing operations is at least the sum of twelve hundred dollars.

"That gill net fishing is conducted and carried on in all tide and non-tide waters of the state of Washington, and is conducted for all practical purposes by means of a net about three hundred and fifty fathoms in length and one hundred meshes of three inch stretch measure in depth; that it is necessary in order that said net may be used efficiently that it shall lie open, without tension, the meshes being spread open,

and the net spreading in the water transverse to the current or tide in such manner that it automatically entraps the fish in the meshes of the net by means of the gills of the fish; that a purse net or seine is about eighteen hundred feet in length and varies in depth from eighteen to twenty-six fathoms, and is operated in such manner by about eight men or more and with engine power, in addition, so as to entrap the fish by pulling in the purse lines, thereby taking in from six hundred to eight hundred marketable fish and sometimes eighteen or twenty thousand fish in one haul.

"That the necessary investment of a gill net fisherman is usually confined to one individual and is operated by one or two men and if said business is unreasonably and oppressively restricted or prohibited it would entirely confiscate the property of the fisherman invested in his tackle and apparel and accoutrements, to his individual damage in the sum of twelve hundred dollars or more; that it is necessary that they follow their calling and vocation each day in the year, and it is only possible to successfully operate the same during the hours after sunset and before daylight; that in order to operate a gill net feasibly or for any practical purpose it would require a working line at least four hundred fathoms in length, whereas under the provisions of said act of March 6, 1915, the gill net fisherman is only permitted to use a working line limited to five hundred feet in length, which is insufficient and impossible of any practical use or utility in the waters of Puget Sound.

"That under the provisions of said act above mentioned, and by reason of the limitation of the dimension of the working tackle, the provisions thereof are discriminatory in favor of the purse net as against the gill net and to the injury and extermination of the gill net fishermen, and for the protection and benefit of the purse net fishermen, and that the same is arbitrary and unfounded upon any consideration of public health or public safety or upon any necessity, inherent or otherwise, but simply as aforesaid, for the discrimination against the gill net fishermen."

Other allegations follow these, invoking the protection of the state and Federal constitutional guaranties above noticed.

The discriminating provisions of the law which are particularly called to our attention and claimed by counsel for appellants to withhold from them the equal protection of the laws in violation of the constitutional guaranties invoked, are found in section 36 of the law, reading as follows:

"It shall be unlawful to use any pound net, trap, fish wheel or other fixed appliance for catching salmon or other food fish with meshes under three inches, stretch measure. It shall be unlawful to operate in any of the waters of Puget Sound any purse seine, drag seine or other like seine or net of a greater length than five hundred feet with meshes less than two and one-half inches stretch measure, during the year 1915, and after January first, 1916, with meshes less than three inches stretch measure. It shall also be unlawful to operate in any of the said waters any gill net of a greater length than five hundred feet with meshes less than five inches stretch measure." Laws of 1915, p. 80, § 36.

The argument of counsel for appellants is, in substance, that, since purse and drag seines of over five hundred feet in length with meshes of "three inches stretch measure" may be used, while gill nets of over five hundred feet in length shall have meshes of "five inches stretch measure," there is thereby prescribed a discrimination in favor of those engaged in purse and drag seine fishing and against those engaged in gill net fishing, and that, therefore, purse and drag seine fishermen are granted privileges and immunities which are withheld from appellants, who are gill net fishermen.

It seems plain to us that this is not a discrimination between, or a classification of, persons; but only a discrimination as to appliances which may be used; and that as to each class of such appliances, every person may use them under exactly the same conditions and restrictions. There is no suggestion in the law that gill nets may not be used as the law prescribes by all persons, or that purse and drag seines may not be used as the law prescribes by all persons. There is plainly no discrimination touching any characteristic or

quality attaching to the person of appellants or any other person.

It has become the settled law of this state, in harmony with the rule prevailing in other states, that the classification of territory in game and fish laws preventing hunting or fishing in a portion of the state and permitting it elsewhere in the state is not a discrimination between, or a classification of, persons in violation of the state or Federal constitutional guaranties here invoked. *Hayes v. Territory*, 2 Wash. Terr. 286, 5 Pac. 927; *State v. Tice*, 69 Wash. 403, 125 Pac. 168, 41 L. R. A. (N. S.) 469; *Cawsey v. Brickey*, 82 Wash. 653, 144 Pac. 938. Among the numerous decisions of other states so holding we note: *Portland Fish Co. v. Benson*, 56 Ore. 147, 108 Pac. 122; *Bittenhaus v. Johnston*, 92 Wis. 588, 66 N. W. 805, 32 L. R. A. 380.

Classification of methods of taking fish, making certain methods lawful and other methods unlawful, has been held not to discriminate between persons in violation of any constitutional right. *State v. Lewis*, 134 Ind. 250, 33 N. E. 1024, 20 L. R. A. 52; *State v. Mrozinski*, 59 Minn. 465, 61 N. W. 560, 27 L. R. A. 76.

Classifications of businesses, even as between businesses constituting places of amusement, in Sunday observance laws, making some lawful and others unlawful on Sundays, has been held not to be a classification of persons within the privileges and immunities or the equal protection guaranties of the state and Federal constitutions. *State v. Nichols*, 28 Wash. 628, 69 Pac. 372; *State v. Dolan*, 13 Idaho 693, 92 Pac. 995, 14 L. R. A. (N. S.) 1259; *Carr v. State*, 175 Ind. 241, 93 N. E. 1071, 32 L. R. A. (N. S.) 1190.

Discriminations in the peddlers' license law by classifying territory, articles peddled, and means of conveying articles while being peddled, has been held by this court not to be a discrimination between persons in violation of the constitutional guaranties here invoked. *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N. S.) 1207.

A law looking to the preservation of health, requiring
herds of dairymen selling milk in cities, towns or villages to
be registered with the live stock sanitary board, while not
applying to persons who may sell milk in the country, was
held not to be an unconstitutional discrimination between per-
sons, by the supreme court of Maryland in *State v. Broad-
belt*, 89 Md. 565, 43 Atl. 771, 73 Am. St. 201, 45 L. R. A.
433.

This court held in *State v. Storey*, 51 Wash. 630, 99 Pac.
878, that the herd law permitting stock to run at large in
certain portions of the state and preventing it in other por-
tions of the state under certain conditions is not a discrimi-
nation as between persons in violation of any constitutional
right.

These decisions rest upon the theory that such discrimina-
tions have no reference to any characteristic or quality at-
taching to the person of those who may be affected by such
laws.    Manifestly every person is privileged to reap the
benefit of this law and escape the consequences of violating
its provisions, upon terms which "equally belong to all citi-
zens," without surrendering in the least any of the rights
they may possess, apart from the subject-matter the law
regulates.

A critical examination of the decisions relied upon by coun-
sel for appellants will, we think, show that they deal with
laws which classify persons as such, apart from considera-
tions having any reasonable relation to the subject-matter of
the laws involved. We notice those most strongly relied upon,
as follows:

In *State v. Montgomery*, 94 Me. 192, 47 Atl. 165, 80 Am.
St. 386, there was involved a peddlers' license law which pro-
vided for the granting of peddlers' licenses to citizens of the
United States and preventing the granting of such licenses
to aliens though living in the state. This was held to be a
denial to aliens of the equal protection of the laws as guar-
anteed by the fourteenth amendment to the constitution of

the United States, providing that: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." This holding was rested, manifestly, upon the theory that the citizenship of the applicant for a license had no possible lawful relation to the subject-matter of the law in the light of this Federal constitutional guaranty.

In *Gustafson v. State*, 40 Tex. Cr. 67, 48 S. W. 518, 43 L. R. A. 615, there was involved a law discriminating between taxpayers and nontaxpayers as to the right to take oysters from public waters. This was held to violate the constitutional guaranty of equal rights, in that it was a discrimination between persons because of a difference which had no proper relation to the subject-matter of the law.

In *State v. Hill*, 98 Miss. 142, 53 South. 411, 31 L. R. A. (N. S.) 490, there was involved a law discriminating as to the fishing rights in the waters of a given county between the inhabitants of that county and other inhabitants of the state. This was held to be an unconstitutional discrimination between persons within the jurisdiction of the state. Manifestly, the mere difference in residence could have no proper relation to the subject-matter of the law. In *Harper v. Galloway*, 58 Fla. 255, 51 South. 226, 26 L. R. A. (N. S.) 794, and *State v. Higgins*, 51 S. C. 51, 28 S. E. 15, 38 L. R. A. 561, the same conclusions were reached upon the question of discrimination between residents of different portions of the state.

In *State v. Mitchell*, 97 Me. 66, 53 Atl. 887, 94 Am. St. 481, there was involved a law discriminating between those who paid taxes to the amount of $25 and those who paid a less tax, the former being permitted to peddle without a license, while the latter were required to procure a license and pay a fee therefor. This was held to be an unconstitutional classification of persons based upon a difference which had no reasonable relation to the law.

In all of these decisions relied upon by counsel for appellants there was manifestly attempted to be made by the law

makers a classification of persons, which was not limited to a difference in appliances, means or methods used in carrying on the particular occupation or business sought to be regulated. This, we think, renders those decisions and the problems there involved quite different from the question here presented.

Counsel for appellants makes some contention that, by the allegations of their complaint, they have presented a condition calling for the taking of evidence in the courts upon the question of the real nature of the discrimination effected by this law. It is argued that the facts here alleged bring this case within an exception to the rule that the constitutionality of a statute must be determined from those matters which appear upon its face and from those matters of which the court may take judicial notice. The suggestion that the court should hear evidence touching the question of the constitutionality of a statute is somewhat startling when the possible far-reaching effect of such a course is, upon reflection, rendered apparent. Manifestly, such is not the rule, as has been clearly pointed out in numerous decisions, among which are: *Stevenson v. Colgan*, 91 Cal. 649, 27 Pac. 1089, 25 Am. St. 230, 14 L. R. A. 459; *Pittsburgh, C. C. & St. L. R. Co. v. State*, 180 Ind. 245, 102 N. E. 25, L. R. A. 1915 D 458, and notes. We are not prepared to say that there cannot be found in the books seeming exceptions to this rule. But if there are such exceptions which are real rather than apparent, we are quite convinced they are wholly inapplicable to laws of the nature here involved. However, our conclusion would be the same in this case though we should regard the allegations of appellants' complaint as showing that the vocation of gill net fishing would be entirely destroyed by this law, in view of the fact that the state is thereby legislating concerning its own property and prescribing the methods which may be used in acquiring it by private persons.

Some argument seems to be made rested upon the allegations of the complaint which, if true, tend to show that the

three-inch mesh permitted to be used in purse and drag nets is much more destructive to the fish than the five-inch mesh permitted to be used in gill nets. This argument might be appropriate to be addressed to the legislature. It possibly might be of some persuasive force as tending to show that the law is unwise, or even that it is unjust to the people of the state, but with that we have nothing to do. It might be all of that and still not be discriminatory as between persons. It would not for that reason grant privileges or immunities to one class and withhold them from another, which upon the same terms would not equally belong to all persons; nor would it deny to any person the equal protection of the laws.

The judgment is affirmed.

MORRIS, C. J., MOUNT, MAIN, and HOLCOMB, JJ., concur.