`



## NUMBER 13-09-00181-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**KEMUEL LINDSEY,**                                                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                                        **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion on Remand by Justice Garza**

Appellant, Kemuel Lindsey, was convicted of retaliation, a third-degree felony. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(B) (West Supp. 2010). After Lindsey pleaded "true" to an enhancement paragraph, the offense was enhanced to a second-degree felony, and Lindsey was sentenced to twenty-five years in prison. *See id.* § 12.42(a)(3) (West Supp. 2010). On appeal, Lindsey (1) challenges the sufficiency of the evidence to support his conviction, (2) claims there was an error in the jury charge, and (3)

complains that he received ineffective assistance of trial counsel. On July 29, 2010, we overruled Lindsey's three issues and affirmed the trial court's judgment. *Lindsey v. State*, No. 13-09-00181, 2010 Tex. App. LEXIS 6018, at *7-17 (Tex. App.—Corpus Christi July 29, 2010, pet. granted) (mem. op., not designated for publication). The Texas Court of Criminal Appeals subsequently vacated our judgment and remanded the case to us to more fully address Lindsey's argument with respect to evidentiary sufficiency. *Lindsey v. State*, No. PD-1415-10, 2011 Tex. Crim. App. Unpub. LEXIS 447, at *1-2 (Tex. Crim. App. Apr. 20, 2011) (per curiam) (not designated for publication). We affirm.

## I. BACKGROUND

In our 2010 memorandum opinion, we set forth the factual background of this case as follows:

> Nisar Ahmed owns Coastal Mart, a convenience store and gas station located at 2214 Leopard in Corpus Christi, Texas. On August 21, 2008, Ahmed and his employee Richard Nolte were working in the cash register area when Lindsey walked into the store. Ahmed testified that Lindsey wandered around the store asking customers for money and then ran outside to panhandle money from a customer who was pumping gas. According to Ahmed, Lindsey then re-entered the store, cut in line, and purchased a bag of chips for ninety-nine cents. After making his purchase, Lindsey lingered near the cash registers as another customer attempted to make a purchase. Ahmed testified that Lindsey "was looking [at] the wallet of the customer," which concerned Ahmed. The customer then stated that he needed to return to his car to obtain more money to purchase the item and walked outside. Lindsey followed the customer.
>
> Ahmed testified that, out of his continued concern, he followed Lindsey outside and asked him not to panhandle his customers. According to Ahmed, Lindsey then proclaimed that Ahmed was "disrespecting him." Ahmed repeated his request to Lindsey not to badger his customers and to leave the store premises when Lindsey suddenly punched Ahmed in the face. Ahmed testified that the punch knocked his glasses off and caused him to fall. He testified that the left side of his face began to bleed and swell. Ahmed got up, grabbed a nearby stick to protect himself, ran inside to ask Nolte to call the police, and then returned outside where he and Lindsey continued to argue.

Nolte testified next. He stated that Ahmed actually asked him to call the police before he went outside to follow Lindsey. He testified that he was "on the phone with the police dispatch when the defendant hit [his] boss." Nolte witnessed the entire assault and also provided testimony regarding Ahmed's facial injuries.

Officer Gabriel Garcia, a four-year veteran of the Corpus Christi Police Department, testified that he saw Ahmed and Lindsey arguing when he arrived at the convenience store. Officer Garcia noted that Lindsey matched the description of the offender who had been reported to the police dispatch, so he approached Lindsey, patted him down for weapons, and then detained him in the back of his marked patrol unit. Officer Garcia then spoke to Ahmed, who told him that "Lindsey was begging for money and [Ahmed] had told him numerous times to stop begging for money" when Lindsey punched him. At that point, Officer Garcia stated that he took Lindsey into custody for assault causing bodily injury.

Officer Garcia testified that, while driving Lindsey to jail, Lindsey made several threats to "come back and hurt Mr. [Ahmed] for getting him arrested." At one point, Lindsey stated that he was going to "beat the fuck out of this clerk again." When Officer Garcia asked Lindsey to calm down and relax, Lindsey instead responded, "Fuck you. I'm coming back to fuck him up for putting me in jail."

A jury found Lindsey guilty of the crime of retaliation, and this appeal ensued.

*Lindsey*, 2010 Tex. App. LEXIS 6018, at *1-4.

## II. DISCUSSION

By his first issue, Lindsey argues that the evidence adduced at trial was legally and factually insufficient to support his conviction. In particular, he contends that the evidence failed to establish that his statements to Officer Garcia "were in any way directed to inhibit [Ahmed] from reporting criminal activity or acting as a witness."

### A.    Standard of Review and Applicable Law

In determining whether the evidence is sufficient to support each element of a criminal offense, we apply only a legal-sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under such a standard, we consider the

3

evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19). When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, such a jury charge would state that Lindsey was guilty of retaliation if he (1) intentionally or knowingly (2) harmed or threatened to harm Ahmed (3) by an unlawful act (4) in retaliation for or on account of Ahmed's status as a person who reported the occurrence of a crime. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(B). A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2003). A person acts knowingly when he is aware of the nature of his conduct or that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Intent can be inferred from the acts, words, and conduct of the accused. *See Beltran v. State*, 593

4

S.W.2d 688, 689 (Tex. Crim. App. 1980).  Under the retaliation statute, a threat does not have to be communicated directly to the person being threatened.  *Doyle v. State*, 661 S.W.2d 726, 728 (Tex. Crim. App. 1983) (per curiam).

**B.  Analysis**

On original submission, we concluded that the evidence was sufficient to allow a reasonable juror to find the elements of the crime beyond a reasonable doubt.  *Lindsey*, 2010 Tex. App. LEXIS 6018, at *4-8.  We noted specifically that "Lindsey's continued threats after, and in spite of, a police officer's warning for him to stop lend support to the notion that his statements were made intentionally or knowingly," *id.* at *7, and "[t]he statement that Lindsey intended to 'com[e] back to fuck [Ahmed] up for putting [him] in jail' establishes that he was making the threat in retaliation for Ahmed's report to the Corpus Christi Police Department about the assault."  *Id.*  The court of criminal appeals, in vacating our judgment, found that we had conducted a mere "generalized review of the sufficiency of the evidence" and instructed us to instead "address appellant's specific argument"—namely, that the State was required, and failed, to prove that Lindsey's threats were "intended to inhibit [Ahmed] from reporting criminal activity or acting as a witness."[1]  *Lindsey*, 2011 Tex. Crim. App. Unpub. LEXIS 447, at *2.

This argument requires us to construe the retaliation statute.  Our primary objective when construing a statute is to give effect to the Legislature's intent as expressed in the statute's language.  *See* TEX. GOV'T CODE ANN. § 312.005 (West 2005); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008).  When statutory language is clear and unambiguous, we apply language in accordance with its

---

[1] The court of criminal appeals restated Lindsey's argument in the form of a question posed to this Court:  "[D]oes the defendant have to intend that the victim either (1) hear or learn about his threats; or (2) be intimidated by his threats?"  *Lindsey v. State*, No. PD-1415-10, 2011 Tex. Crim. App. Unpub. LEXIS 447, at *2 (Tex. Crim. App. Apr. 20, 2011) (per curiam) (not designated for publication).

plain and common meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

In support of his argument, Lindsey directs us to two retaliation cases where, according to him, the defendants' threatening statements "were made under circumstances that showed the threat was intended to return to the target of the threat." First, in *Doyle v. State*, the appellant was convicted of making retaliatory threats to kill a judge that ruled against him in a divorce case. 661 S.W.2d at 727. The appellant made the threats during an interview with a police officer while he was in jail. *Id.* at 728. The *Doyle* Court reiterated the long-standing rule that "[t]he fact that the party threatened was not present when the threat was made is no defense." *Id.* (citing *Gerick v. State*, 45 S.W. 717 (Tex. Crim. App. 1898)). The Court noted that "[a] central purpose of the statute is to encourage a certain class of citizens to perform vital public duties without fear of retribution" and that "[s]uch fear is as likely to be caused by a threat relayed through a third party as it is by a direct threat." *Id.* Therefore, even though the threat was communicated only to a third-party police officer, the evidence was sufficient to establish the appellant's intent to threaten to harm the judge. *Id.*

Lindsey also cites *Lebleu v. State*, in which the appellant was convicted of making retaliatory threats against a judge who ruled against him in a child custody case, and against his ex-wife, who served as a witness in that case. 192 S.W.3d 205, 209 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). The court in *Lebleu* noted that the retaliation statute "do[es] not require that appellant intend to carry out the threat, take any affirmative steps to carry out the threat, or even that appellant issue the threat directly to the public servant or witness." *Lebleu*, 192 S.W.3d at 209. The court affirmed the conviction with respect to the threat against the judge, noting that, even

6

though the threats were not made in the judge's presence, the intent element was established because the appellant "threatened to put dynamite down the judge's throat to show the judge how it felt to have someone control his life." *Id.* Appellant's conviction with respect to the threats made against his ex-wife was also affirmed; the evidence was sufficient to establish the appellant's culpable intent because witnesses testified that appellant was angry with his ex-wife due to actions she took in the custody case. *Id.* at 209-10.

Pointing to *Doyle* and *Lebleu* as examples, Lindsey argues that a retaliation conviction requires "somethi[n]g more than the mere expression of a verbal utterance that might be construed as a threat"; according to Lindsey, it also requires a showing that the defendant intended to exert an "inhibitory effect" on the threatened individual. He claims that the State failed to meet that burden here because "[t]here is nothing showing that [his] statements in the police car were in any way directed to inhibit [Ahmed] from reporting criminal activity or acting as a witness." We disagree. First, we do not believe, as Lindsey claims, that the *Doyle* and *Lebleu* cases turned on "circumstances showing a likelihood of [the threat] being relayed to the victim" such that an "intent to inhibit" could be inferred. In fact, the outcomes of both *Doyle* and *Lebleu* would likely have been different if a showing of "intent to inhibit" were actually required. *See Doyle*, 61 S.W.2d at 727 (appellant communicated threat against judge only to police officer while in jail; no direct evidence that appellant intended for judge to personally hear the threat); *Lebleu*, 192 S.W.3d at 211 (rejecting appellant's contention that "he constantly makes threats, but because he never intends to carry them out, his conviction is not sound").

7

Second, we note that a close examination of the statute supports the conclusion that retaliation does not require a showing of intent to inhibit the behavior of the target of the threat. Section 36.06(a) of the penal code defines two crimes: retaliation and obstruction. *See* TEX. PENAL CODE ANN. § 36.06(a)(1), (2). Both crimes require a showing that the defendant "intentionally or knowingly harm[ed] or threaten[ed] to harm another by an unlawful act." *Id.* Obstruction, described in subsection (a)(2), additionally requires a showing that the defendant intended "to prevent or delay the service of another" as a public servant, witness, informant, or reporter of a crime. *Id.* § 36.06(a)(2). Retaliation, on the other hand, contains no such element. *See id.* § 36.06(a)(1). Instead, the retaliation statute merely requires a showing that the defendant acted "in retaliation for or on account of the service or status of another" as a public servant, witness, informant, or reporter of a crime. *Id.* The Legislature could have easily included an "intent to inhibit" element in the definition of retaliation—as it did in the definition of obstruction—but it chose not to, and it is not our province to add that element. *See* TEX. GOV'T CODE ANN. § 312.005 (requiring us to give effect to the Legislature's intent as expressed in the statute's language).[2]

Lindsey states that "[t]he Legislature could not have possibly intended to make it a felony to state in passing 'I'm going to hurt X' when such statement was made in

---

[2] It is noteworthy that the crimes of obstruction and retaliation are defined in the same penal code section and differ only in the manner discussed above; i.e., in that the former requires a showing of intent "to prevent or delay the service of another" whereas the latter does not. *See* TEX. PENAL CODE ANN. § 36.06(a)(1), (2) (West Supp. 2010). The offense of obstruction is designed to protect against acts by a defendant intended to *interfere with prospective actions* that might be taken by the target of the threat. Retaliation, on the other hand, protects against acts by a defendant intended to *avenge past actions* taken by the target. To graft an additional "intent to inhibit" element onto the retaliation statute, as Lindsey suggests, would render it virtually indistinguishable from the obstruction statute. *See Metts v. State*, 22 S.W.3d 544, 547 (Tex. App.—Fort Worth 2000, no pet.) ("We presume that the legislature used every word and phrase in a statute for a purpose and if the legislature excluded certain words in a statute, it did so for a reason.").

passing to a friend with no contact with person X."[3]  However, that is precisely what the Legislature has done according to the plain meaning of subsection 36.06(a)(1).  As the court in *Lebleu* stated:

> The crime of retaliation does not require an intent to follow through with a threat.  It is not an element of the crime.  So long as a person issues a threat, knowingly and intentionally, and for the reasons set out in the statute, then she is guilty of the crime.

192 S.W.3d at 211.  The statute does not implicitly or explicitly require that the threat be communicated to the victim; that the defendant intend for the threat to be communicated to the victim; or that the defendant intend that the victim be intimidated or inhibited from engaging in certain behavior.  *See Doyle*, 661 S.W.2d at 729 ("Nothing in the wording of the statute commands that the threat be face to face.").  The statute does not even require that the threat be credible.  All that the State was required to show, in this case, was that Lindsey intentionally or knowingly threatened to harm Ahmed on account of Ahmed's reporting of a crime.  *See* TEX. PENAL CODE ANN. § 36.06(a)(1).  The State did this.  The fact that the evidence showed that the threat was expressed to a police officer, instead of to Ahmed himself, is immaterial.  In prosecuting a defendant under subsection 36.06(a)(1) of the penal code, it is unnecessary for the State to establish that the victim either (1) heard or learned about the threats, or (2) was intimidated by the threats.  *See id.*; *but see Wilkins v. State*, 279 S.W.3d 701, 704-05 (Tex. App.—Amarillo 2007, no pet.).[4]

---

[3]  Lindsey asserts, without reference to authority, that "[p]ermitting conviction on the mere utterance of words, without more, would create a constitutionally infirm statute," and that the *Doyle* and *Lebleu* cases show that "courts construe the [retaliation] statute in a fashion to prevent unconstitutional overbreadth."  To the extent Lindsey is attempting to raise an issue as to the constitutionality of subsection 36.06(a)(1) of the penal code, that issue has not been adequately briefed and is therefore waived.  *See* TEX. R. APP. P. 38.1(i).

[4]  In *Wilkins v. State*, the Amarillo court of appeals reversed the trial court's decision to revoke the appellant's probation based on a charge of retaliation.  279 S.W.3d 701, 705 (Tex. App.—Amarillo 2007,

We conclude that a rational juror could have found beyond a reasonable doubt that Lindsey intentionally or knowingly threatened to harm Ahmed by an unlawful act in retaliation for, or on account of, Ahmed's status as a person who reported the occurrence of a crime. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(B); *Jackson*, 443 U.S. at 319. His first issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.[5]

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
14th day of July, 2011.

---

no pet.). The appellant was accused of threatening a judge presiding over a child custody dispute. *Id.* at 703. The evidence showed that appellant repeatedly stated, while he was on a telephone call outside of the courtroom, that he wished the judge would die. *Id.* In its evidentiary sufficiency analysis, the Amarillo court stated that, "[a]s [the retaliation charge against appellant is] a result oriented offense, the action being criminalized is the threat to harm and the intent to inhibit public service by others." *Id.* at 704 (citing *Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App.—San Antonio 1996, no writ)). The court continued:

> Therefore, we cannot focus on the nature of the offense . . . . Rather we consider whether appellant made the statement with the intent to inhibit [the judge's] service as a public official or with knowledge that it was reasonably certain that his statement would inhibit [the judge's] service as a public official. . . .

*Id.* at 704-05. Because "no evidence support[ed] a conclusion that appellant meant to affect [the judge's] actions or emotional well-being," the court found the evidence to be insufficient to establish retaliation. *Id.* at 705.

We decline to follow *Wilkins*. The *Wilkins* court cites only *Doyle* in asserting that a showing of the defendant's "intent to inhibit" is necessary to obtain a retaliation conviction, but *Doyle* says nothing of the sort. The *Doyle* Court did recognize that "[a] central purpose of the statute is to encourage a certain class of citizens to perform vital public duties without fear of retribution," 661 S.W.2d 726, 729 (Tex. Crim. App. 1983), but it did not imply that the defendant must have had the "intent to inhibit" in order to convict. Moreover, as noted, the statute contains no requirement, explicit or implicit, that the defendant actually intend for the victim to hear or appreciate the threat. The making of the threat itself is what is criminalized under the plain language of the statute—not the communication of that threat to the victim.

[5] In our 2010 memorandum opinion, we fully considered Lindsey's second and third issues and overruled them. *Lindsey v. State*, No. 13-09-00181, 2010 Tex. App. LEXIS 6018, at *8-17 (Tex. App.— Corpus Christi July 29, 2010, pet. granted) (mem. op., not designated for publication). The court of criminal appeals has not instructed this Court to reconsider those decisions; therefore, the issues remain overruled, and we need not address them here. *See* TEX. R. APP. P. 47.1.