[No. 21401.   Department Two.   November 9, 1928.]

THE STATE OF WASHINGTON, *Respondent,* v.
S. V. B. MILLER, *Appellant.*[1]

*J. W. Lindsay,* for appellant.

*The Attorney General, E. W. Anderson, Assistant,* and *J. W. Bryan,* for respondent.

ASKREN, J.—The defendant was tried and convicted on a charge of engaging in game farming without se-

[1]Reported in 271 Pac. 826.

curing a license as required by law. The action evidently being a test case, the defendant was fined ten dollars and costs, whereupon he entered his appeal.

The facts, substantially, are as follows: Appellant has been breeding foxes for a number of years and at the time of trial had in Kitsap county thirty-six pairs of the animals, one-half being silver and the others blue foxes. The animals are raised for their pelts, and for sale for breeding purposes. Silver and blue foxes are a rare species of the fox and are very valuable. The particular foxes owned by appellant had been bred and raised in captivity for many years. Their ancestors were originally native of Alaska or Canada, and, although propagation of silver and blue foxes was begun in 1874, the industry never attained prominence until 1900. Appellant's foxes are registered with a national and also a northwest fox breeders' association, and for at least fifteen years they or their ancestors have been in captivity. They are commonly kept in a large enclosure covered with small pens for each pair of foxes, and are fed prepared food. By reason of this fact, some of them become more or less tame. These foxes have been assessed each year as personal property by the county assessor.

Turning now to the law necessary to be applied to these facts, we find that the legislature of this state, by Laws of 1925, Ex. Ses., ch. 178, p. 539, § 106; Rem. 1927 Sup., § 5931-106, provided for the licensing of game farms in the following language:

"For the purpose of encouraging game farming and the domestication and propagation of wild animals, game fish and game birds, a game farmer's license, which shall authorize the licensee to engage in the business of purchasing, breeding and selling game animals, fur-bearing animals, and game fish, as defined by this act, game birds or non game birds, shall be issued, subject to the provisions of this act by the super-

visor of game and game fish to any responsible resident person duly applying therefor, such license to expire on March 31st following the date of its issuance. The fee for such license shall be twenty dollars ($20). After such license has been issued, it shall be valid as long as said licensee pays the supervisor of game and game fish, for the benefit of the game fund, an annual fee of ten dollars ($10), unless otherwise determined under the provisions of this act: . . . ." Rem. 1927 Sup., § 5931-106.

Section 2 of the same act provides:

"For the purpose of this act wild animals shall be classified as follows: Game animals, fur-bearing animals and predatory animals. . . .

"The words 'fur-bearing animal,' wherever used in this act, shall be held to mean and include the beaver, otter, muskrat, mink, martin, fisher, sable, fox, skunk, and civet cat." Laws of 1925, p. 494, § 2; Rem. 1927 Sup., § 5931-2.

It will thus be seen that the legislature has, by complete and explicit terms, provided that any one engaged in the business of purchasing, breeding or selling foxes must have a license therefor. The provisions are too plain to require interpretation, and since appellant's business comes strictly and wholly within the mandate of the statute, it is clear that unless the act be declared void there can be no escape for appellant from its requirements and penalties.

Appellant has presented a very interesting and instructive argument designed to establish the fact that these particular foxes, by reason of their long captivity and that of their ancestors, have become no longer wild, but domestic animals. Grounded upon this theory, he builds the further argument that the statute discriminates against fox farmers in favor of all persons raising other domestic animals, and is therefore unconstitutional. In determining the ques-

tion of the constitutionality of this statute, we cannot consider whether within the classification made by the legislature there may be certain animals in the class named that have become domestic and are no longer wild, for the determination of the classification belongs to the law-making body. Matters of expediency are purely its concern, not that of the courts. When it decides that a class of animals requires regulation, it may then decide, if it so wishes, whether the proper regulation of the class may require regulation of some that might well be excepted from the class if it so desired. The legislature saw fit to class all foxes as wild animals. Unless we can say that we know as an established, uncontroverted fact that foxes are domestic animals, it is plain that the legislative determination of that fact must stand. While it may be that many may believe that foxes long in captivity become tame and domesticated, yet we cannot say such fact is without dispute or that the legislature arbitrarily decided the matter.

An entirely different question would be presented were the legislature to classify foxes as domestic animals, for since there can be no dispute that ordinary foxes are by nature wild animals, courts will take judicial notice of that fact. It is a well settled rule that in determining the constitutionality of an act the courts will not go beyond those facts of which it can take judicial notice. To do so is to make the courts, not the legislature, the authors of the classification and its expediency. *Barker v. State Fish Commission,* 88 Wash. 73; 152 Pac. 537, Ann. Cas. 1917D 810; *State ex rel. Govan v. Clausen,* 108 Wash. 133, 183 Pac. 115.

Contention is also made that foxes of the kind owned by appellant are not native of this state, and that since they were brought here in captivity and have always been so held, the state has acquired no

property in them or right to control. Again we are met face to face with the proposition, heretofore argued, that the legislature, in the protection of its own property, may impose a regulation upon other property which never belonged to it, if in its opinion such a regulation is needed. The point argued is somewhat similar in effect to one presented in the case of *State v. Nelson,* 146 Wash. 17, 261 Pac. 796, where a dealer in fish purchased from a private hatchery in Montana a box of trout and offered the same for sale in this state without reporting the receipt of the fish to the game supervisor for tagging or marking as required by law. There, as here, the appellant contended that the legislature might have the right to regulate as it saw fit its own game and game fish, but it did not possess that power over fish brought in from without the state and lawfully acquired. We disposed of the contention by saying:

"The appellant, however, seems to contend further that, while the legislature may have this power with respect to the game of the state, it does not have such power with respect to game lawfully acquired without the state and brought within the state. But if this be his meaning, the contention is unsound. For the protection of its own property, the state may regulate the possession and disposition of property of like kind when brought within the state from another jurisdiction. If there be a limitation at all upon its powers in this respect, it is only that the regulation be reasonable, and we find nothing unreasonable in the regulation it has adopted."

Applying the rule of the *Nelson* case to this, we are unable to see, from the face of the act or from facts of which we can take judicial knowledge, that the regulation is unreasonable. Multiplied instances might be cited to show the reasons which may have actuated the legislature in adopting the classification including all foxes. Two very simple ones will suffice: Suppose

the legislature decided that in order to properly place the seasons for, and manner of, killing foxes, it was necessary to know how many fox pelts were yearly sold or shipped from the state of Washington. It may have found that it was difficult to determine the number of native foxes killed, by referring to the sales or shipment of pelts due to the sale also of silver and blue fox pelts. It would not be an unreasonable regulation to establish a regulation over the silver and blue foxes to secure this information. Or it might be that there is a disease common to the native as well as the silver and blue foxes, and it was thought advisable to regulate the latter for the purpose of protection of the native.

Unless we can say that no fact could possibly exist to justify the act of the legislature, we must assume that such a state of facts actually did exist. In *State ex rel. Stimson Timber Co. v. Kuykendall,* 137 Wash. 602, 243 Pac. 834, we quoted approvingly from *Munn v. Illinois,* 94 U. S. 113, as follows:

" 'For our purpose we must assume that, if a state of facts could exist that would justify such legislation, it actually did exist when the statute now under consideration was passed. For us the question is one of power, not of expediency. If no state of circumstances could exist to justify such a statute, then we may declare this one void, because in excess of the legislative power of the state. But if it could we must presume it did. Of the propriety of legislative interference within the scope of the legislative power, the legislature is the exclusive judge.' "

It is also contended that appellant is deprived of his property without due process, since they are domestic animals upon which he pays a personal property tax, and cannot therefore be legally subject to a double tax. It may be that a tax cannot be imposed upon the business of raising domestic animals. We

pass over this point, for, even assuming that the foxes in question have become domestic animals, the license fee imposed is not in the nature of a tax, but a fee for the purpose of regulation, and not for revenue.

The amount of the fee indicates that it is not a revenue measure, but designed for costs of inspection necessary for regulation. The title of the act, as well as its provisions, breathes the spirit of regulation and protection. In this connection the claim is made that this is not a regulatory fee, because no attempt has been made to enforce the regulatory provisions of the act. Whether this is due to the dispute arising over the right to require a game license and place appellant under the provisions of the act, we are not advised. It may be that after the license is issued the state will proceed with its regulation and inspection. In any event, the failure of the state to regulate and inspect as required by law cannot argue against the power of the legislature to provide for it and exact a fee therefor.

We think the other points urged do not merit extended review in this opinion.

Judgment affirmed.

FULLERTON, C. J., FRENCH, PARKER, and MAIN, JJ., concur.