[No. 17258-9-III.  Division Three.  July 27, 1999.]

SAMIS LAND COMPANY, ET AL., *Petitioners*, v. THE CITY OF SOAP LAKE, *Respondent*.

SCHULTHEIS, C.J. — In 1989, the Soap Lake City Council adopted an ordinance that imposed a "standby charge" on vacant, unimproved land that abutted city water and sewer lines. In 1996, Samis Land Company, a local landowner, filed a complaint requesting a refund of fees paid pursuant to the municipal ordinance. The complaint alleged the standby charge was an illegal property tax. The City of Soap Lake maintained the charge was a proper regulatory fee. Samis petitioned for discretionary review of the trial court's denial of its motion for summary judgment. We reverse and remand for further proceedings consistent with this opinion.

Samis Land Company owns a large number of platted, but undeveloped parcels of land lying within the boundaries of the City of Soap Lake. There is some dispute in the record regarding whether or not city water and sewer lines abut each of the lots owned by Samis but that issue is not relevant to this appeal. In 1989, the Soap Lake City Council passed an ordinance that was codified as section 13.08.175 of the SOAP LAKE MUNICIPAL CODE (SLMC). The new law allowed the City to assess a $60 per year per lot fee as a "standby charge" against persons owning property described as "vacant, unimproved land which shall abut a line providing water service or sewer service but have no connection thereto." SLMC 13.08.175. Accordingly, by

1996, $46,635 in fees had been assessed against the lots owned by Samis.

After filing a complaint against the City, Samis moved for summary judgment claiming the standby charge constituted an illegal property tax, which violated the uniformity clause of the Washington Constitution.[1] Samis alleged the standby charge was improper because the property tax was not apportioned according to the value of the property taxed. Samis requested all fees paid pursuant to the ordinance be refunded and that the City be permanently enjoined from imposing the charge in the future. Following a hearing, the summary judgment motion was denied. Pursuant to RAP 5.1(a), Samis filed a timely petition for discretionary review, which was granted.

Samis contends the trial court erred when it denied Samis's summary judgment motion. Instead, the court determined that the "standby charge" authorized by the Soap Lake Municipal Code was a regulatory fee rather than an invalid property tax. We disagree with the trial court's decision.

■■ This court engages in the same inquiry as the trial court when reviewing a ruling on a summary judgment motion, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516 (citing *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)).

■ Here, viewing the disputed facts most favorably to

---

[1]"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . . . All real estate shall constitute one class[.]" Wash. Const. art. VII, § 1 (amend. 81).

the City, we must decide whether the trial court correctly determined that the standby charge is a permissible regulatory fee. A municipal ordinance is presumed constitutional, unless it involves a suspect class or a fundamental right, and there is a heavy burden on the challenger to show otherwise. *Weden v. San Juan County*, 135 Wn.2d 678, 690, 958 P.2d 273 (1998).

■ The ordinance at issue, SLMC 13.08.175, states in relevant part:

> A. Any person, firm or corporation owning or purchasing vacant, unimproved land which shall abut a line providing water service or sewer service but have no connection thereto shall pay a standby charge of sixty dollars per year per platted lot or unplatted area.
>
> . . . .
>
> C. The assessment shall be in addition to all other assessments or charges made in relationship to the usage of water or sewer.

Samis relies on the Supreme Court's decision in *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995) to challenge the trial court's finding that the standby charge created by city ordinance was a valid regulatory fee.

The *Covell* court set forth three factors that determine whether a charge imposed by a municipality is a valid regulatory fee or an invalid nonuniform property tax. In order to qualify as a regulatory fee the charge must satisfy the following three factors: (1) the primary purpose of the charge must be regulatory, not simply to generate revenue; (2) "the money collected must be allocated only to the authorized regulatory purpose"; and (3) there must be "a direct relationship between the fee charged" and either "the service received by those who pay the fee or . . . the burden produced by the fee payer." *Id.* at 879.

We first consider whether the primary purpose of the standby charge is to accomplish desired public benefits that

cost money, or to regulate conduct. Shirley Roberson, the clerk/treasurer for the City, stated in her affidavit that since September 1990 she has collected the standby charges and paid them into the "Water Capital Improvement Fund." She explained the collected charges remain in the improvement fund until she is authorized by the City Council to disburse it.

> To date, the sum of $87,942.19, has been expended, all for water and/or sewer capital improvement planning and/or construction, all of which has benefited the entire water/sewer systems in the City and thus has benefited all of the property owners in the City of Soap Lake.
>
> Further, the City has a new deep well under construction, because one of its existing wells is now pumping contaminated water, and the City is also now involved in updating its comprehensive sewer plan as required by State law, in preparation for a major updating of the sewerage treatment plant. All of these capital improvements will benefit all property in the entire City of Soap Lake. It is anticipated by the Council that some of these capital expenditures will be paid out of the Water Capital Improvement Fund . . . .

Samis claims this statement proves that the primary purpose of the standby charge is to generate revenues to finance public works projects, not to regulate conduct. It maintains the City acknowledged this fact in its discovery responses when it admitted that "the primary purpose of the standby charge is to generate revenues . . . ." The City also admitted the ordinance does not, in and of itself, regulate the use of water and/or sewerage systems. As further proof, Samis argues that the standby charge is imposed only on property that does not utilize water or sewerage systems, therefore, it is not *possible* that the standby charge could regulate a landowner's conduct. As a result, Samis contends the standby charge fails the first prong of the *Covell* test.

The City responds that the ordinance is only *part* of the City's water and sewerage laws contained in Title 13 SLMC, entitled Public Services. It argues that Title 13, read in

its entirety, does regulate the use of water and sewerage systems. As evidence of regulation, the City points to the stated purpose of the combined waterworks system as set forth in SLMC 13.04.010, which is "to conduct the operation, management and control of the water system and sewer system of the city more efficiently and economically . . . ." Additionally, the City cites RCW 35.67 as giving it the authority to build, construct, operate and maintain water and sewerage systems with revenue from rates and charges. It maintains the statute provides that the only restriction on a city's authority to fix water/sewerage rates and charges is that the rates and charges imposed must be uniform as to the same class of service. RCW 35.67.020.

The standby charge here appears similar in function to the street utility charge challenged in *Covell*. The *Covell* court determined that most of the language in the city ordinance relating to the street utility charge dealt with fiscal planning rather than the type of service or benefit the ratepayer would receive. *Covell*, 127 Wn.2d at 880-81. That is the same scenario we are addressing under these facts. We cannot find any paragraph located in SLMC 13.08.175, or any other section of Title 13, that makes any reference to the type of service or benefit a non-water/sewer line connected landowner can expect to receive in exchange for payment of the standby charge. As a result, the standby charge fails the first prong of the *Covell* test.

The second *Covell* factor to consider is whether the money collected is allocated only for authorized regulatory purposes. *Id.* at 879. According to the clerk/treasurer, the standby charges collected pursuant to the ordinance all go into the Water Capital Improvement Fund. That fund is then spent on capital improvement planning and/or construction costs associated with the water/sewerage system. It was anticipated that some money from the Water Capital Improvement Fund would be spent on the City's projected modernization of its sewerage treatment plant. These are necessary costs the City must somehow raise revenue to fund. Nevertheless, consistent with the decision

in *Covell*, these types of costs appear on the surface to be public benefits that cost money rather than an attempt to assist with any type of city regulatory function. *Id.* at 885-86 (citing *San Telmo Assocs. v. City of Seattle*, 108 Wn.2d 20, 24, 735 P.2d 673 (1987)). Accordingly, the standby charge fails the second prong of the *Covell* test.

The final *Covell* factor is whether there is a direct relationship between the fee charged and the service received by or the burden produced by the ratepayer. *Covell*, 127 Wn.2d at 879. These are alternative requirements and only one need be established. *Thurston County Rental Owners Ass'n v. Thurston County*, 85 Wn. App. 171, 179, 931 P.2d 208, *review denied*, 132 Wn.2d 1010 (1997). The City argues that maintenance of the health and welfare of the entire community of Soap Lake protects Samis's economic investment in the parcels of land it owns within the city limits. As evidence of the direct service Samis receives as a result of the standby charge, the City claims Samis's property is protected from the resulting contamination caused by the collection of sewage on its properties. The City points out that the existence of a financially viable, efficient and operable water/sewerage system increases the value and marketability of Samis's properties and decreases the expense and time needed to develop the lots in the future. In our opinion, these arguments make the standby fee appear to be more of a tax than a regulatory fee.

The trial court abused its discretion when it denied Samis's summary judgment motion. The standby charge fails all three of the *Covell* factors. We reverse and remand for further proceedings consistent with this opinion.

BROWN and KATO, JJ., concur.